UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREY HEREDIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SUNRISE SENIOR LIVING LLC,<br><br>Defendant. | Case No.18-cv-00616-HSG<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION; GRANTING MOTION TO TRANSFER; DEFERRING RULING ON MOTION TO DISMISS**<br><br>Re: Dkt. No. 29 |

Pending before the Court are a motion to compel arbitration, a motion to transfer, and a motion to dismiss by Defendant Sunrise Senior Living LLC. For the reasons set forth below, the Court **GRANTS** Defendant's motion to compel arbitration, **GRANTS** the motion to transfer, and **DEFERS** ruling on the motion to dismiss.

**I.     BACKGROUND**

In this putative class action, Plaintiffs Audrey Heredia, Amy Fearn, and Helen Ganz allege three causes of action against Defendant under (1) California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"); (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"); and (3) Cal. Welf. & Inst. Code § 15610.30 (elder financial abuse). Plaintiffs allege that Defendant, an operator of assisted living facilities for seniors, misrepresented how it used an individualized resident assessment in determining the level of care required by its residents.

**A.     Factual Allegations**

Defendant "provides assisted living and memory care for senior citizens and persons with disabilities" in facilities across the United States, including 52 facilities it owns and/or operates in California. Dkt. No. 19 (First Amended Complaint, or "FAC") ¶ 19. Such facilities "offer room,

board, and daily assistance for seniors in certain activities of daily living." *Id.* ¶ 20. In recent years, Defendant has accepted "more residents with conditions and care needs that were once handled almost exclusively in skilled nursing facilities." *Id.* ¶ 22.

Defendant charges a base rate "which includes room, board, and basic maintenance, cleaning, and laundry." *Id.* ¶ 23. Defendant conducts periodic assessments of residents, including one prior to their admission to a facility, to determine "what additional services [they] need[]." *Id.* Defendant uses this information to assign residents a "Service Level," which determines how much time staff must spend to care for a resident and "the amount charged per-day for fees." *Id.*

Defendant "represents that it will use its resident assessment system to identify the level of care necessary to ensure that residents receive the services they require and to identify the amount [it] will charge them for services." *Id.* ¶ 24; *see also id.* ¶¶ 25-30 (describing residency agreement provisions that show a connection between services received and level of care as assessed). Moreover, Defendant's marketing "explicitly links staffing levels to the assessed needs of its residents." *See id.* ¶ 32; *see also id.* ¶ 33.

Despite this, Plaintiffs allege that Defendant's "facilities are not sufficiently staffed to meet the aggregate assessed needs of all facility residents," a fact which Defendant does not disclose to residents, their families, and the public. *Id.* ¶ 37. On information and belief, Plaintiffs allege that Defendant "has the capability to determine the facility staffing levels required to meet the aggregate care scores promised to residents," but does not do so because certain "corporate directives discourage facilities from providing compensation and benefits sufficient to attract and retain sufficient numbers of qualified staff." *Id.* ¶ 38 ("[W]hile Defendant uses this resident assessment system to assign Service Levels and charge the corresponding daily rates, as a matter of corporate policy and practice, Sunrise has failed to ensure sufficient staffing is provided to meet assessed resident needs."). As one example of such a "corporate directive," Plaintiffs specifically point to language in job descriptions for the executive directors of Defendant's facilities that "instruct[] that meeting labor budgets and operating income targets is a paramount concern," and provide that executive directors "should meet[] financial targets with the goal to maximize the owner[']s return." *Id.*

### B. Procedural Posture

Plaintiffs filed a putative class action complaint in Alameda County Superior Court on June 27, 2017. Dkt. No. 1-1. Defendant filed a notice of removal on January 29, 2018. Dkt. No. 1. Defendant initially filed a version of this motion on February 5, 2018, Dkt. No. 15, after which Plaintiffs filed the FAC, Dkt. No. 19.

Plaintiffs filed the motion to appoint Helen Ganz's daughter, Elise, as her guardian ad litem on February 23, 2018. Dkt. No. 20. Defendant confirmed it did not oppose that motion on March 8, 2018. Dkt. No. 28. On March 30, 2018, Defendant filed its renewed motions to compel or dismiss for improper venue, to transfer, and to dismiss for failure to state a claim. Dkt. No. 29 ("Mot."). Plaintiffs filed their opposition on April 30, 2018, Dkt. No. 30 ("Opp."), and Defendant replied on May 21, 2018, Dkt. No. 34 ("Reply").

On June 7, 2018, the Court heard argument on the pending motions and granted Plaintiffs' motion to appoint Elise Ganz as her mother's guardian ad litem. Dkt. No. 37.

## II. LEGAL STANDARD

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting federal policy favoring arbitration). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In analyzing

3

whether an arbitration agreement is valid and enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In interpreting the validity and scope of an arbitration agreement, courts apply state law principles of contract formation and interpretation. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998).

When considering a motion to compel arbitration, the Court is limited to determining (1) whether a valid arbitration agreement exists, and, if so (2) whether the arbitration agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). If these conditions are satisfied, the court must compel arbitration. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration.").

### B. Motion to Transfer

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a) (2012). The transfer statute exists "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). The moving party bears the burden of showing that the transferee district is a "more appropriate forum." *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). And the district court has broad discretion in deciding whether or not to transfer an action. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) ("[T]he district court's decision to change venue is reviewed for abuse of discretion. Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.") (citation and internal quotation marks omitted).

District courts engage in a two-step analysis for motions to transfer. First, they determine "whether the transferee district was one in which the action 'might have been brought' by the

4

plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) (quoting 28 U.S.C. § 1404(a)). If so, the courts engage in "an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622)). In this District, courts typically consider the following factors: (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum. *See, e.g.*, *Perez v. Performance Food Grp., Inc.*, No. 15-CV-02390-HSG, 2017 WL 66874, at *2 (N.D. Cal. Jan. 6, 2017); *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *2 (N.D. Cal. Feb. 14, 2014); *Wilson v. Walgreen Co.*, No. C-11-2930 EMC, 2011 WL 4345079, at *2 (N.D. Cal. Sept. 14, 2011).[1]

## III. DISCUSSION

### A. Plaintiffs Do Not Oppose Defendant's Motion to Compel Arbitration of Heredia's Claims

Defendant contends that the Court should compel arbitration of Heredia's claims and stay those claims pending arbitration. *See* Mot. at 15. Plaintiffs responded with a statement of non-opposition as to Heredia's claims only, without stating a preference as to whether the Court should dismiss or stay the claims. *See* Opp. at 4. At oral argument, however, Defendant changed course and stated that Heredia's claims should be dismissed pending arbitration, while Plaintiffs contended for the first time that the Court should stay her claims.

In the Ninth Circuit, courts have discretion under Section 3 to either stay or dismiss claims that are subject to an arbitration agreement. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *see also Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) ("If the court finds that an arbitration clause is valid

---

[1] These factors are "[c]onsistent" with Ninth Circuit precedent. *See Wilson*, 2011 WL 4345079, at *2; *see also Jones*, 211 F.3d at 498-99 (listing eight *examples* of factors that courts may consider). *Jones* also declared that "the presence of a forum selection cause" and "the relevant public policy of the forum state" were both "significant" factors. 211 F.3d at 499. However, these two factors are irrelevant here, given that no forum selection clause is at issue and this is a motion for an intrastate transfer.

5

and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed.") (citation omitted). That said, the "preference" of the Ninth Circuit is to "stay[] an action pending arbitration rather than dismissing it." *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014). Defendant has not articulated any reason why the Court should override that preference. Accordingly, the Court will stay Heredia's claims pending arbitration.

Defendant further argues that "the Court should exercise its discretion to stay *all* class claims pending resolution of [Heredia's] arbitration to conserve judicial resources and avoid conflicting judgments." Reply at 2 (emphasis added). At oral argument, Defendant cited *Campanelli v. Imagefirst Healthcare Laundry Specialists, Inc.* in support of its request for a stay of the entire action to provide sufficient time to determine how many putative class members are subject to arbitration. *See* No. 15-CV-04456-PJH, 2017 WL 2929450 (N.D. Cal. June 10, 2017). In *Campanelli*, the plaintiff alleged violations of the Fair Labor Standards Act and California labor laws. *Id.* at *1. The defendants filed a motion to stay the proceedings until the Supreme Court issued a decision in a determinative case, which was set to be heard a few months later. *Id.* at *2. The district court agreed that "[u]nder the particular circumstances of [the] case," a stay was appropriate. *Id.* at *4. Unlike the defendants in *Campanelli*, however, Defendant did not file a motion to stay the entire action. Instead, Defendant raised the issue for the first time in its reply brief, without engaging the relevant standard and leaving Plaintiffs with little opportunity to substantively respond except at oral argument. In light of the well-settled principle that "[t]he proponent of a stay bears the burden of establishing its need," *Clinton v. Jones*, 520 U.S. 681, 708 (1997), the Court finds that Defendant has not carried its burden, and declines to stay the entire action pending arbitration of Heredia's claims.

Accordingly, the Court grants Defendant's unopposed motion to compel arbitration of Heredia's claims and stays the proceedings with respect to Heredia only.

### B. Defendant's Motion to Transfer Is Granted

Defendant next asks the Court to transfer this case to the Central District of California. Mot. at 15. The Court agrees that transfer is appropriate.

### 1. Plaintiffs Could Have Brought This Action in the Central District

"A proper district court is one: (1) that has subject matter jurisdiction; (2) where defendant would have been subject to personal jurisdiction; and (3) venue would have been proper." *Brown*, 2014 WL 715082, at *3 (citing *Hoffman*, 363 U.S. at 343-44). The Court finds that this threshold requirement is met.

First, the parties are subject to diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, district courts have original jurisdiction where the amount in controversy exceeds $5 million and where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Here, Plaintiffs are citizens of California, *see* FAC ¶¶ 10-12, and Defendant is a citizen of Delaware and Virginia, *see id.* ¶ 13. In addition, Plaintiffs allege that the "aggregate amount in controversy . . . is greatly in excess of $5,000,000." *Id.* ¶ 16. Second, Defendant "would have been subject to the personal jurisdiction of another California District Court." *See Brown*, 2014 WL 715082, at *3. Third, venue properly lies in the Central District, where "a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391(b)(1); FAC ¶¶ 50-58 (describing experience of Heredia, one of three named Plaintiffs, at Defendant's Santa Ana facility).[2] Finally, Plaintiffs do not dispute that the action could have been brought in the Central District, so the only contested issue before the Court is the second step of the transfer analysis.

### 2. Considerations of Convenience and Fairness Favor Transfer of the Action

In the second step of the transfer analysis, the Court declines to consider two of the eight factors typically considered by courts in this District: court congestion and feasibility of consolidation.[3] Further, it separately considers one of the factors suggested by the Ninth Circuit:

---

[2] Alternatively, venue in the Central District is proper because Defendant is subject to the Court's personal jurisdiction there. *See* 28 U.S.C. § 1391(b)(3).
[3] The Court does not compare the court congestion and time of trial in the two districts because ongoing application of this doctrine could have the unintended consequence of penalizing efficiency by effectively placing more cases in the districts with the shortest time to trial. In addition, the Court is somewhat skeptical of the ability of the Court or the parties to accurately and meaningfully capture these metrics as of *today*, which is the only timeframe that matters for this purpose. As to the feasibility of consolidation, neither party addresses this factor. Given its apparent inapplicability, the Court finds this factor to be neutral.

7

"differences in the costs of litigation in the two forums." *See Jones*, 211 F.3d at 499. Balancing the relevant factors, the Court finds that transfer is warranted.

### a. Plaintiffs' Choice of Forum and Convenience of the Parties

Defendant contends that Plaintiffs' choice of forum is not entitled to substantial weight in the class action context and that the Central District is more convenient for all parties. *See* Reply at 4.

"Although great weight is generally accorded plaintiff's choice of forum, when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight." *Perez*, 2017 WL 66874, at *3 (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)); *see also Papasan v. Dometic Corp.*, No. 16-CV-02117-HSG, 2018 WL 1367341, at *2 (N.D. Cal. Mar. 16, 2018). "In judging the weight to be accorded to [a plaintiff's] choice of forum, consideration must be given to the extent of both [the plaintiff's] and [the defendant's] contacts with the forum, including those related to [the plaintiff's] cause of action." *Lou*, 834 F.2d at 739 (citation omitted). Nevertheless, while "courts routinely consider the location and concentration of putative class members in deciding motions to transfer," courts still accord "the plaintiffs' choice of forum . . . significant weight, so long as the named plaintiffs actually reside in or have some connection to the chosen forum." *Garlough v. Trader Joe's Co.*, No. 15-cv-01278-TEH, 2015 WL 4638340, at *3 (N.D. Cal. Aug. 4, 2015) (citations omitted). This factor is further "discount[ed]" insofar as "the convenience of putative class members other than the named Plaintiffs will become irrelevant if class certification is ultimately denied." *See id.*

Here, two Plaintiffs reside or resided in Defendant's facilities in this District, while one resided in a Santa Ana facility. *See* FAC ¶¶ 50, 59, 68. On that basis, Plaintiffs' ties to this District are sufficient, particularly given that Heredia—the one named Plaintiff not residing in this District—has agreed to arbitration. Still, the weight accorded to Plaintiffs' choice of forum must be considered in light of the putative class members' locations. Defendant argues that approximately 6,650 of the 12,740 putative members "reside or resided" in facilities in the Central District, compared to only 3,850 in this district. *See* Mot. at 16 (citing Dkt. No. 15-2 (Declaration of Marc Roder, or "Roder Decl.") ¶ 4). Plaintiffs counter that the 3,850 putative class members in

8

this district evince a "substantial nexus to [their] chosen forum," and moreover, that "it is likely that only a limited number of putative class members (aside from the Named Plaintiffs) will provide testimony on the claims or defense raised in the lawsuit." *See* Opp. at 6.

This speculative argument by Plaintiff is insufficient to overcome Defendant's showing that venue in the Central District would be more convenient for substantially more of the putative class members. *See Garlough*, 2015 WL 4638340, at *3 (finding that, despite plaintiff bringing suit in this District, "[i]f a class is ultimately certified, it will be more convenient for the majority of class members for the case to proceed in the Central District, because they can more easily participate in court proceedings there. The distribution of putative class members therefore favors transfer."). Defendant has also made a persuasive showing that *it* would find the Central District more convenient, since it "has more communities and more residents in the Central District than any other federal judicial district in California." *See* Mot. at 16 (citing Roder Decl. ¶ 5). And as discussed during the hearing, even the process of determining whether class treatment is warranted will involve discovery regarding the entirety of the proposed class, and the Court assumes this might include requests for depositions or information from some putative class members. *See* Reporter's Transcript of Proceedings at 20-21, Dkt. No. 41.

Accordingly, because more than half of the putative class lives in the Central District—and because Defendant has more communities in the Central District than in the Northern District— the convenience to the parties outweighs Plaintiff's choice of forum and favors transfer.

**b. Convenience to Witnesses and Ease of Access to Evidence**

Next, Defendant contends that the Central District is "more convenient for witnesses," and that "transfer will facilitate ease of access to documentary evidence in both the parties' and non-parties' possession." Mot. at 16-17.

The convenience of non-party witnesses is often considered the most important factor in assessing a motion to transfer. *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *10 (N.D. Cal. Dec. 9, 2014); *Brown*, 2014 WL 715082, at *4. As Defendant argues, "[g]iven the concentration of [its] communities in the Central District, a clear majority of . . . potential witnesses are located there." Mot. at 17 (listing "[l]ikely witnesses" as "current and

9

former residents, their family members, and [Defendant's] employees"). And many of these potential witnesses are also putative class members. Plaintiffs, however, point out that "[m]ost if not all of the 'facility level' witnesses (e.g., residents, family members, current or former caregivers) pertaining to [the named Plaintiffs] are likely to reside within the Northern District," since those Plaintiffs reside within the Northern District, "and thus would likely find it more convenient to testify here." Opp. at 7. Consistent with the logic of *Garlough*, there are more putative class members in the Central District, allowing the Court to draw a reasonable inference that there are more potential "facility-level" witnesses in that district as well.

Relatedly, courts may also consider "the availability of compulsory process to compel attendance of unwilling non-party witnesses." *Jones*, 211 F.3d at 498-99; *Arreola*, 2014 WL 6982571, at *10. In this case, insofar as any non-party witnesses in the Central District would need to be compelled to testify at a deposition, hearing, or trial, such witnesses would likely be beyond this Court's subpoena power. *See Arreola*, 2014 WL 6982571, at *10; *Wilson*, 2011 WL 4345079, at *4; Fed. R. Civ. Proc. 45(c) (limiting subpoena power under most circumstances to "within 100 miles of where the person resides, is employed, or regularly transacts business in person"). The witness convenience factor therefore weighs in favor of transfer.

Next, with respect to the factor examining ease of access to evidence, "[t]he location of evidence may be an important factor[,] . . . [but] is neutral or carries only minimal weight when the evidence is in electronic form." *Brown*, 2014 WL 715082, at *5. Because "technological developments have reduced the burden of retrieving and transporting documents" this factor's importance "has diminished . . . in the transfer analysis." *Ambriz*, 2014 WL 2743886, at *2. Even where the evidence is stored in hard copy form, courts may look to whether transporting or producing the documents would impose "significant hardship." *See Wilson*, 2011 WL 4345079, at *2 (quoting *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007)).

Here, Defendant disputes that "evidence in this case might be in electronic form or could be easily copied into electronic form." *See* Reply at 5. Specifically, Defendant points to a declaration by its vice president of resident care, who states that Defendant "still maintains many resident records in paper format," *see* Dkt. No. 34-1 (Declaration of Lynn Chalk) ¶ 3, and that

10

"documentation related to the day-to-day operation of each individual Sunrise community *may* be maintained in paper form," *id.* ¶ 5 (emphasis added); *see also id.* ¶ 4 (describing paper records kept with respect to each of Defendant's residents). Defendant's declaration is insufficient to show that ease of access to evidence favors transfer, particularly in light of technological developments that would allow Defendant to more easily transmit documents to this district. Moreover, Defendant's contention that it keeps substantial hard-copy records notwithstanding, it has made no showing that transporting or producing those documents would impose "significant hardship." *See Wilson*, 2011 WL 4345079, at *2 (quoting *Van Slyke*, 503 F. Supp. 2d at 1362). Accordingly, the ease of access to evidence factor is neutral.

### c. Familiarity of Each Forum with Applicable Law; Local Interest; Difference in Litigation Costs

With respect to the familiarity of each forum with the applicable law, both forums are federal district courts located in California, and both are equally familiar with the applicable California and federal law. Plaintiff contends that this factor weighs against transfer, "given that multiple courts in the Northern District have issued legal rulings in cases filed against assisted living chains that raise similar claims." Opp. at 8. But this factor measures a court's familiarity with the applicable law generally, not, as Plaintiff contends, its experience with "the specific legal issues raised by the instant allegations," *see id.* Plaintiff admits that "courts in both Districts are obviously well-versed in the [relevant] case law." *See id.* This factor is therefore neutral.

Courts also consider the "local interest in deciding local controversies." *Brown*, 2014 WL 715082; *Arreola*, 2014 WL 6982571, at *11; *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (listing public factors relevant to convenience of forum). Here, Defendant has a substantial number of facilities and residents (who are putative class members) in the Northern District and Central District, although it has more of both in the latter. *See* Roder Decl. ¶¶ 3-4. The Central District would thus have a modestly stronger interest in the class action, if certified. The Northern District, on the other hand, clearly has a stronger interest in two of the three named Plaintiffs' claims: they live in this District, *see* FAC ¶¶ 50, 59, 68, and the events that form the basis for their causes of action took place here, *see id.* ¶¶ 50-76. Given the

11

legitimate local interests present in both judicial districts, the Court finds this factor to be neutral.

Lastly, "[w]hile convenience to the parties' attorneys is not an appropriate factor for the Court to consider when deciding a motion to transfer, the difference[] in the costs of litigation in the two forums is relevant." *See Arreola*, 2014 WL 6982571, at *10 (internal quotations omitted). Plaintiffs argue that "the offices of all but one of [their] Counsel are located in the Northern District" and "[w]itnesses pertaining to the experiences of Named Plaintiffs Zack and Ganz . . . most likely reside in the Northern District." Opp. at 9. As such, Plaintiffs contend travel costs will be lower for most of their attorneys and their key witnesses. *See id.* at 9-10. Defendant, whose counsel are located in the Northern District and in Washington, D.C., counters that Plaintiffs' conclusion is misplaced because it "flows directly from their self-serving assumption that because they intend to rely on a limited set of evidence that is all that the case as a whole will require." *See* Reply at 6. While there are more putative class members and more of Defendant's facilities in the Central District, this District is home to (1) the majority of the parties' counsel, (2) the named Plaintiffs, (3) a substantial number of putative class members, and (4) a substantial number of Defendant's facilities. Accordingly, this factor is neutral.

### d. Balancing the Factors

Plaintiffs' choice of forum, as always, weighs against transfer, but is entitled to less deference because Plaintiffs brought their case as a putative class action. In contrast, the convenience of the witnesses (often considered the most important factor) weighs in favor of transfer, as does the convenience of the parties. The remaining factors relevant to this analysis—ease of access to evidence, the forum's familiarity with the applicable law, the local interest in deciding controversies, and the costs of litigation—are neutral. On balance, transferring this action to the Central District serves the convenience of both the parties and non-party witnesses—particularly if this case is ultimately certified.

The Court therefore grants Defendant's motion to transfer.

### C. The Court Defers Ruling on the Motion to Dismiss

Because this case will be transferred to the Central District of California, this Court defers ruling on Defendant's motion to dismiss, so that it may be considered by the transferee court. *See,*

*e.g.*, *Thomas v. Asterion, Inc.*, No. CV 10-01973 JF (HRL), 2010 WL 3037149, at *3 (N.D. Cal. July 30, 2010) (deferring consideration of remaining motions).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to compel arbitration, **GRANTS** the motion to transfer, and **DEFERS** ruling on the motion to dismiss. The Clerk of Court shall **TRANSFER** this case to the United States District Court for the Central District of California.

**IT IS SO ORDERED.**

Dated: 10/31/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge